# 2000 DTA 177

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL I DE SAN JUAN**
**PANEL IV**

ANTONIO SOSA FONSECA
Apelante

v.

HOSPITAL SAN FRANCISCO, *ET ALS.*
Apelados

Núm. KLAN-98-00767

San Juan, Puerto Rico, a 16 de agosto de 2000

Panel integrado por su Presidenta, la Juez López Vilanova,
el Juez Cordero y la Juez Feliciano Acevedo

Feliciano Acevedo, Juez Ponente

### TEXTO COMPLETO DE LA SENTENCIA

El apelante, Antonio Sosa Ponseca, presenta apelación en la que solicita revoquemos una sentencia dictada por Tribunal de Primera Instancia, Sala Superior de San Juan, el 1ro. de junio de 1998. En la misma, el tribunal apelado desestimó una demanda de daños y perjuicios por impericia médica presentada por éste contra los apelados, Hospital San Francisco y otros. Alega, básicamente, que el tribunal incidió en su apreciación de la prueba y no admitir el informe pericial de un perito de la parte apelada. Además señala que el tribunal erró al no permitir el testimonio de un testigo no anunciado en el proyecto de informe de conferencia con antelación a juicio y un testigo de la parte apelada para el cual había una reserva en la parte de asuntos pendientes del mismo proyecto.

Cumplido el término para presentar su oposición al recurso, ninguno de los apelados comparecieron. Examinado el recurso de apelación, y a la luz de derecho aplicable, estamos en posición de resolver.

# I

Los hechos, según fueron probados por el tribunal apelado y la prueba ante nos, son los siguientes. El 1 de septiembre de 1990, el apelante sufrió un accidente automovilístico que le provocó fractura del fémur de la pierna izquierda. Por razón de las lesiones experimentadas, fue trasladado al Hospital Regional de Caguas. Luego fue transferido al Centro Médico y de allí la Sala de Emergencia del Hospital San Francisco. Esto por no haber un ortopeda que le pudiera asistir.

En el Hospital San Francisco, el apelante fue atendido por el ortopeda doctor Felipe Fontánez Sullivan, quien le intervino quirúrgicamente. Este le práctico una reducción abierta de la fractura mediante la aplicación de una varilla de metal fijada con tornillos.

El 7 de septiembre de 1990, el apelante fue dado alta. Continuó asistiendo a las citas programadas con el Dr. Fontánez Sullivan, así como cuando sentía la necesidad de hacerlo. Durante este tiempo, el apelante no tuvo queja sobre los servicios brindados por el ortopeda.

Luego de quejarse de molestias por razón de roce de uno de los tornillos que sostenía la placa de metal, se determinó remover el mismo. Para esto fue necesario que el apelante fuera admitido para llevar a cabo el procedimiento. El mismo fue realizado el 24 de mayo de 1991. Al día siguiente fue dado de alta.

El apelante continuó sus visitas al ortopeda. Este reanudó sus actividades normales, que incluian trabajar como despachador en el almacén de Avon. A pesar de haberse recuperado de la segunda intervención, desarrolló dolor en el área en que permanecían los otros tornillos y la placa.

En enero de 1992, se decide remover los tornillos restantes, así como la placa. El 24 de enero de 1992, el apelante fue admitido nuevamente al Hospital San Francisco y ese mismo día se le practicó la remoción. Dos días más tarde fue dado de alta, no sin antes recibir una cita con el Dr. Fontánez Sullivan en dos semanas. El apelante se encontraba alerta, orientado y estable dentro de condición.

El técnico de ortopedia Francisco Burgos, quien examinó al apelante y cambió el vendaje, expresó que la herida supuraba un líquido sanguinolento de color transparente, pero con algún rojo o rosa que era normal. El señor Burgos habló con el Dr. Fontánez Sullivan e informó al paciente y a su familiar que a pesar de tener una cita con el médico en dos semanas, de ser necesario podía visitarlo antes.

El apelante se fue para su casa. Esa noche éste sintió mucho dolor en la herida, por lo que se comunicó con su hermana para que lo llevase a la oficina del Dr. Fontánez Sullivan al día siguiente. Luego de visitar varios lugares en busca del ortopeda, finalmente éste lo examinó en su oficina de Bayamón. Fue evaluado y las pruebas determinaron que existía una infección que había creado una fístula.

Por órdenes del ortopeda, éste fue admitido nuevamente en el Hospital San Francisco. Fue sometido a tratamiento para erradicar la infección y lograr la cicatrización completa de la herida. Sin embargo, el apelante no experimentó mejoría dentro del tiempo esperado, por lo que fue referido a la infectóloga doctora Vázquez.

En un principio, la doctora Vázquez atendió al apelante ambulatoriamente. Luego estimó que debía hospitalizarse para seguir de cerca el caso. Por lo que fue admitido para tratamiento. Se le hicieron los cultivos necesarios para verificar que la bacteria que provocaba la infección era sensitiva a la terapia de antibióticos que se le suministraba. Finalmente fue dado de alta, luego que la doctora Vázquez determinara que estaba recuperado y no tenía infección.

El apelante fue referido a la doctora Otero Castro para evaluación. La doctora Otero Castro examinó los expedientes médicos y el 25 de febrero de 1993 rindió su informe. Determinó que el tratamiento fue adecuado, que el paciente se había curado de su condición y que no había evidencia de infección activa a ese momento. Sin embargo, declaró que existía un riesgo de reactivación del proceso en el futuro.

El 29 de abril de 1993, el apelante presentó una demanda en daños y perjuicios en la que incluia como partes al Hospital San Francisco, San Francisco Orthopedic Group, el Dr. Felipe Fontánez Sullivan, su esposa y la sociedad legal de gananciales de éstos, así como otros demandados, designados con nombres desconocidos. Este alegó que por la acción negligente de éstos, quienes se apartaron de lo que constituye la mejor práctica de la medicina, éste desarrollo osteomielitis en el hueso, a consecuencia de lo cual sufrió intensos dolores, sufrimientos y angustias mentales. Alegó que todos respondían solidariamente.

El Hospital San Francisco y el Dr. Fontánez Sullivan presentaron sus contestaciones en las que básicamente declaran que ninguno había incurrido en negligencia, ya que el apelante había recibido la atención médico-hospitalaria acorde con la mejor práctica de la medicina, según está generalmente reconocida, y con la atención esperada en un hospital.

Comenzado el descubrimiento de prueba, los apelados le tomaron una deposición al apelante, su hermana y su perito, el Dr. Luis E. Hernández Ortiz; así también se le notificó interrogatorio escrito. El apelante no contestó el interrogatorio dentro del término legal correspondiente, por lo que se le impuso una sanción económica de doscientos dólares ($200.00). Esta sanción se dejó sin efecto.

Las partes celebraron la conferencia con antelación a juicio. En ese momento se señaló vista en su fondo del caso. La misma fue cancelada a solicitud del demandante, aquí apelante. Se señaló una nueva vista, la cual fue nuevamente cancelada a solicitud de demandante, aquí apelante. El representante legal del apelante, licenciado Matos, quien no aparecía en récord, expresó que el abogado del apelante, licenciado Rodríguez Juarbe, había sido nombrado Registrador de la Propiedad, lo que lo imposibilitaba estar presente en el juicio. Esto con la objeción de los demandados, aquí apelados, quiene expresaron estar preparados para comenzar el juicio. El tribunal *a quo* ordenó al abogado del apelante explicar la razón por la cual no estuvo presente.

El 22 de septiembre de 1995 comparecieron los dos abogados, los licenciados Rodríguez Juarbe y Matos. Se le ordenó al licenciado Rodríguez Juarbe presentar una moción de renuncia de representación. Ante la necesidad de suspender la vista del caso y el hecho de que el apelante quedaba entonces sin representación legal, se condenó a éste a satisfacer las costas y gastos incurridos por los aquí apelados.

Nuevamente, se señaló vista en su fondo a la que asistieron las partes y los testigos de éstas. El tribunal apelado tuvo la oportunidad de escuchar los testimonios y analizar detenidamente la prueba. A la luz de esta prueba aportada y la credibilidad que le mereció al tribunal, el 28 de mayo de 1998, éste desestimó la demanda y le impuso costas y honorarios al apelante.

Inconforme, el apelante acude ante nos. Solicita que revoquemos la sentencia del tribunal *a quo*. Este alega, principalmente, que erró el tribunal en su apreciación de la prueba y la suficiencia de la misma. Veamos.

## II
En todo caso de impericia médica-hospitalaria existe una presunción de que el médico le brinda un tratamiento adecuado a su paciente, por lo que los reclamantes tienen el peso de la prueba para rebatirla. *Crespo v. Hernández,* 121 D.P.R. 639 (1988). Para ello, se debe establecer, mediante preponderancia de la prueba, que la conducta negligente del proveedor del servicio profesional fue el factor que con mayor probabilidad causó el daño y que dicha conducta no estuvo a la altura de las normas mínimas de conocimiento y cuidado aplicables. *Núñez v. Cintrón,* 115 D.P.R. 598 (1984); *Zambrana v. Hospital,* 109 D.P.R. 517 (1980).

Del mismo modo, un hospital que brinda servicios de salud con un personal que no actúa con la debida diligencia, podrá también generar una acción bajo el Art. 1803 nuestro Código Civil, 31 L.P.R.A. sec. 5142, y ser responsable por los actos negligentes de sus médicos y enfermeras cuando dichos actos u omisiones causen un daño real. *Soto Cabral y otros v. E.L.A.,* 138 D.P.R. ___ (1997 **95 J.T.S. 49;** *Núñez v. Cintrón, supra.*

En relación a la culpa o negligencia por parte de los facultativos y personal de salud de los hospitales, se entiende que constituye culpa *"la omisión de la diligencia exigible mediante cuyo empleo podría haberse evitado el resultado dañoso".* C. Rogel Vide, *La Responsabilidad Civil Extracontractual,* Ed. Civitas, 1976, pág. 90. Esta diligencia es la que cabe esperarse de un buen padre de familia, y a diferencia de la culpa que requiere la ejecución de acto positivo que causa un daño, la negligencia es una omisión que produce el mismo efecto. *Toro Aponte v. E.L.A.,* 142 D.P.R. ___ (1997), **97 J.T.S. 18,** pág. 627.

En Puerto Rico, la doctrina adoptada en torno a las normas mínimas de atención médica al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, es que se espera que el médico y las enfermeras que ofrecen sus servicios profesionales le brinden a sus pacientes la atención, cuidado y destrezas que estén acordes con los modernos medios de comunicación, enseñanza y estado de la ciencia y prácticas prevalecientes en la medicina y que satisfagan de esta manera las exigencias generalmente reconocidas por su profesión. *Santiago Otero v. Méndez,* 135 D.P.R. ___ (1994), **94 J.T.S. 38,** pág. 11706; *Ramos Robles v. Carcía Vicario,* 134 D.P.R. ___ (1993) **93 J.T.S. 167,** pág. 11397.

Dentro de los servicios que ofrecen los hospitales en nuestra comunidad, se encuentran los servicios que se brindan en la salas de emergencia, los que también tienen que cumplir con los modernos medios de comunicación, enseñanza y estado de la ciencia y prácticas prevalecientes en la medicina reconocidas por la profesión. *Flores Ramírez v. Maldonado,* 138 D.P.R. ___ (1995), **95 J.T.S. 89,** pág. 1002.

Toda vez que existe una presunción de que se ha ejercido un grado razonable de cuidado y que se ha brindado un tratamiento médico-hospitalario adecuado, *Ramos Robles v. García Vicario, supra,* en los casos de impericia médica-hospitalaria le corresponde al demandante demostrar con preponderancia de la prueba que el tratamiento médico-hospitalario o la ausencia de un tratamiento adecuado fue el factor que con mayor probabilidad causó el daño alegado por el paciente. En consecuencia, en la parte demandante recae el peso de demostrar que el tratamiento médico-hospitalario suministrado no fue el correcto y que no es por mera especulación o conjetura que llegó a la conclusión de que el acto negligente médico-hospitalario es la causa del daño sufrido. *Soto Cabral y otros v. E.L.A., supra,* a la pág. 815; *Santiago Otero v. Méndez, supra.*

Por otro lado, una persona actúa negligentemente cuando falta al debido cuidado que impone la ley, es decir, cuando no prevé o anticipa las consecuencias racionales de sus actos o la omisión de un acto, como lo haría una persona prudente y razonable bajo las mismas circunstancias. *Ramos v. Carlo,* 85 D.P.R. 353, 358 (1962). *"Así, pues, el actor habrá incurrido en el quebrantamiento de su deber de cuidado, si anticipó o debió anticipar el peligro de daños... si se concluye que un hombre prudente y razonable hubiese podido anticipar tales consecuencias".* H.M. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico,* **Publicaciones J.T.S.,** San Juan (1986), a la pág. 184. Este deber de previsibilidad, sin embargo, no se extiende a todo peligro imaginable, sino a aquel daño que es probable que ocurra. *Vélez Rodríguez v. Amaro Cora,* 138 D.P.R. ___ (1995), **95 J.T.S. 38,** pág. 757.

En resumen, para determinar la negligencia que corresponde a cada parte es necesario analizar y considerar todos los hechos y circunstancias que mediaron en el caso y, particularmente, si ha habido una causa predominante H.M. Brau del Toro, *supra,* a la pág. 412.

Por último, debe tenerse presente que cuando se trata de prueba pericial y documental, los tribunales apelativos están en la misma posición que los tribunales de instancia para evaluar y llegar a sus propias conclusiones de derecho. *Ramos Robles v. García Vicario, supra.* Tampoco, *"debemos ceder a la tentación de*

*sustituir el criterio de los peritos médicos por el nuestro, a base de un estudio a nivel apelativo de la literatura disponible".* Santiago Otero v. Méndez, supra, a la pág. 11709.

A la luz de la normativa antes expuesta, hemos evaluado la sentencia, el alegato del apelante y sus apéndices y debemos concluir que el Foro de instancia no cometió error alguno al concluir que los apelados no fueron negligentes y no incurrieron en impericia profesional.

Surge del informe del Dr. Armando Nazario, perito de la parte apelada, el cual solicita el apelante que se admita en evidencia, que el doctor Fontánez Sullivan *"fue muy diligente en el tratamiento inicial del apelante traumatizado y luego en el tratamiento de su complicación subsiguiente".* Apéndice del Recurso de Apelación, a la pág. 53. Es decir, las opiniones de los peritos están acordes en cuanto a que el tratamiento recibido por el apelante estuvo dentro de lo aceptado como la mejor práctica de la medicina, según se admite por la comunidad médica.

## III

Ahora bien, en cuanto a los señalamientos referentes al orden en que testificaron los peritos y testigos y su credibilidad, debemos señalar que es doctrina claramente establecida que las determinaciones de hecho y la apreciación de la prueba del tribunal sentenciador merecen gran deferencia y respeto de los foros apelativos. En asuntos de credibilidad, se reconoce gran deferencia a las determinaciones de hecho, a la apreciación de la prueba y a la adjudicación de credibilidad efectuada por el tribunal sentenciador. Corresponde a dicho foro aquilatar la prueba testifical ofrecida y dirimir credibilidad. Sin lugar a dudas, el juez que vio y oyó la prueba, es quien está en mejor posición para creerlo o no creerlo. *Méndez v. Morales*, 142 D.P.R. ___ (1996), **96 J.T.S. 149.**

Un tribunal apelativo no intervendrá en la apreciación que de la prueba desfilada haya hecho el foro de instancia, salvo cuando exista pasión, prejuicio o error manifiesto. *Mercado v. Universidad Católica*, 143 D.P. R. ___ (1997), **97 J.T.S. 10.** Los tribunales apelativos deben reconocerle la mayor deferencia al tribunal de instancia en aquellas determinaciones relativas a la conducción de los procedimientos civiles. De lo contrario, se les impediría ejercer la flexibilidad y la creatividad que es necesaria para garantizar una solución justa, rápida y económica de todo procedimiento. Por ello, los tribunales apelativos no debemos intervenir con las determinaciones relativas al orden de la presentación de la prueba y los testigos, a menos que el apelante demuestre un claro abuso de discreción. De lo contrario, los tribunales apelativos estarían a cargo de dirigir los procedimientos ante el tribunal de instancia y esa no es función en nuestro sistema de justicia. *López v. I.T.T.,* 142 D.P.R. ___ (1997), **97 J.T.S. 42.**

En el caso de autos, el apelante no ha podido derrotar la deferencia de la cual goza la apreciación de la prueba y las determinaciones de hecho realizadas por el tribunal sentenciador. Por el contrario, la sentencia apelada está basada en el valor probatorio que el Tribunal de Primera Instancia dio a la prueba ofrecida por los testigos y peritos que fueron presentados al tribunal. La parte apelante no ha derrotado la deferencia de que gozan las determinaciones del Tribunal *a quo.* Tampoco ha demostrado que dicho foro abusara de su discreción o incurriera en error manifiesto. En ausencia de tal evidencia, estamos obligados a confirmar la sentencia apelada.

## IV

Por los fundamentos expuestos, se confirma la sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General